IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

CASE NO.:  3:17-CV-00016

HELEN TOMAS as Personal Representative
of the Estate of JOSEPH A. TOMAS, a/k/a
JOSEPH ANDREW TOMAS a/k/a
JOSEPH ANDREW TOMASZEWSKI,

      Plaintiff,

vs.

RITZ CARLTON (VIRGIN ISLANDS), INC.,

      Defendant.

_____ /

**DEFENDANT'S MOTION TO EXCLUDE**
**OR LIMIT EXPERT MEDICAL OPINIONS OF DR. ANTHONY CUMBO**

Defendant, RITZ CARLTON (VIRGIN ISLANDS), INC. ("RITZ CARLTON"), by and through undersigned counsel and pursuant to Fed.R.Evid. 104(a) & 702, hereby moves this Court for an order excluding or limiting Expert Medical Opinions of Dr. Anthony Cumbo and states:

### *Statement of Case*

This is an unwitnessed survivorship / wrongful death case where it is claimed that on October 14, 2014, JOSEPH TOMAS, a guest at Ritz Carlton Destination Club located in St. Thomas, U.S.V.I., fallen in the club's Coconut Cove Restroom.  From this incident, JOSEPH TOMAS suffered a right hip fracture.  JOSEPH TOMAS lived until March 30, 2016.  His death certificate indicates the cause of death as pneumonia and leukemia.  It was not until after JOSEPH TOMAS passed away, a lawsuit was filed by his wife, HELEN TOMAS. MRS TOMAS brings survivorship / wrongful death claims sounding in negligence against RITZ CARLTON on behalf of the estate as well as JOSEPH TOMAS' survivors which include: MRS. TOMAS; his sons David A. Tomas and Christopher J. Tomas; as wells as his daughter, Joy M.

Johnson.

### *Summary of Argument*

Dr. Cumbo opines that JOSEPH TOMAS was exposed to bacteria during his December 2015 total right hip replacement hospitalization which lead to developing pneumonia which caused his death.  This opinion is based upon speculation and unreliable methodology thus warranting exclusion pursuant to Fed.R.Evid. 702.

### *Brief in Support of Motion*

**I.    Legal Standard**

The United States Supreme Court interpreted Fed. R. Evid. 702 as having three major requirements: (1) the witness must be an expert; (2) the procedures and methods used in forming the expert witness' opinion must be reliable; and, (3) the testimony must "fit" the factual dispute at issue so as to assist the trier of fact. *See, Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).  In addition, Fed. R. Evid. 104 requires the Court to determine preliminary questions concerning the admissibility of evidence by conducting a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." Fed. R. Evid. 104(a).  Accordingly, the Court, acting as a "gatekeeper", must make such a preliminary assessment of whether Dr. Cumbo's opinions satisfies all of the requirements set forth in *Daubert* before his expert testimony is deemed admissible.  As shown below, Dr. Cumbo's opinions should be stricken.

**II.    Faulty Methodology**

Dr. Cumbo did not examine JOSEPH TOMAS nor did he have the benefit of an autopsy. As such, he was left to base his opinion from JOSEPH TOMAS' medical records, deposition of treating physicians and the death certificate. *See, Dr. Cumbo's Expert Report*, attached as Ex. "A".    JOSEPH TOMAS' death certificate does indicate the primary cause of death was

pneumonia. *See, Death Certificate*, attached as Ex. "B". However, neither the death certificate nor any of JOSEPH TOMAS' medical records indicate whether the pneumonia was caused by bacterial infection or virus. Also, these records do not indicate when JOSEPH TOMAS was first exposed to the bacteria or virus which caused the pneumonia. Though Dr. Cumbo bases his opinion that the pneumonia was caused by bacteria, at deposition he could not pinpoint exactly where the bacteria which caused the pneumonia originated. Dr. Cumbo also testified that a person can manifest pneumonia symptomology anywhere from hours to several days after being exposed to bacteria. Specifically, Dr. Cumbo testified:

> Q: Here is [the] question, Dr. Cumbo:
>
> Would you agree with me that you do not know exactly where the bacteria came from that caused Joseph Tomas' pneumonia?
>
> A: With a hundred percent certainty, no.
>
> Q: Okay. Or exactly when he first contracted pneumonia, you don't known that either, fair?
>
> A:  The hour and the date, no.
>
> *See, Depo. of Dr. Cumbo,* Pg. 119, Ln. 19 – Pg. 120, ln. 4, attached as Ex. "C".
>
> Q: How long does it take for that pneumonia to manifest itself, in other words, for the symptoms to occur?
>
> A: It's – it's different for every patient. Depends on the type of bacteria or virus causing it, and the host factors. So it can be a matter of hours to several days.
>
> Q: Okay. And you don't know what type of bacteria it was in

> Mr. Tomas' case, correct?
>
> A:   No, I can't be a hundred percent sure.
>
> Q:   So with that said, and as you testified earlier, you don't know whether or not the bacteria that caused the pneumonia, which was ultimately shown in Mr. Tomas, was present either hours before his symptoms began to occur or several days, as you said, before those symptoms began to occur, fair?
>
> A:   Very fair.
>
> *See, Depo. of Dr. Cumbo*, Pg. 121, ln. 10 – 122, ln. 5, attached as Ex. "C".

This gives a very large time frame from when JOSEPH TOMAS was first exposed to bacteria to when symptoms of pneumonia can first manifest.

Dr. Cumbo's opinion that the pneumonia was hospital acquired is based solely upon JOSEPH TOMAS' development of respiratory compromise during his admission for his total right hip replacement. *See, Depo. of Dr. Cumbo*, Pg. 120, lns. 7 – 17.  The first record indicating repertory issues is dated December 3, 2015. *See, Dec. 3, 2015 Progress Note*, attached as Ex. "D". At that time JOSEPH TOMAS underwent a chest x-ray due to hemoptysis.[1]  This diagnosis was made one day after JOSEPH TOMAS was admitted into the hospital for his total right hip surgery.

An expert's medical opinion must be "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Elcock v. Kmart Corp.*, 233 F.3d 734, 745 (3d Cir. 2000). Such medical opinions must be expressed to a reasonable degree of

---

[1] Hemoptysis is "the spitting of blood or of blood-stained sputum" which is related to a disease due to infection of the lungs. *See,* Dorland's Pocket Medical Dictionary, 319 (23rd ed. 1982)

medical certainty. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 n.4 (3d Cir. 1999).  Failure to provide a scientific basis for the cause of JOSEPH TOMAS' pneumonia makes Dr. Cumbo's opinion unreliable.  In *Mahmood v. Marsico*, 549 Fed. Appx. 99, 102-03 (3d Cir. 2013), the Third Circuit upheld a trial court's order precluding medical expert testimony as unreliable wherein the doctor's report failed to articulate a basis for his opinions.  Dr. Cumbo simply opines that the December 2015 hospital stay was the cause of his pneumonia without any explanation as to the scientific basis of his opinion.  Dr. Cumbo offers no explanation as to why he pinpoints the December 2015 hospital stay as the cause of the pneumonia other than, "because that is when he started to develop respiratory compromise." *See, Depo. of Dr. Cumbo*, Pg. 120, lns. 5-12, attached as Ex. "C".  He does not explain what type of bacteria caused the pneumonia or whether that type of bacteria is common in hospitals as opposed to bacteria that is common outside hospital.  He does not explain whether the total hip replacement procedure JOSEPH TOMAS underwent the day before his respiratory symptoms manifested carried with it the potential for bacterial infection.  Dr. Cumbo identifies no facts to establish other patients in that same hospital developed bacterial infections on or around December 3, 2015.  In short, the basis of Dr. Cumbo's opinion boils down to JOSEPH TOMAS' pneumonia was acquired during the December 2015 hospital stay for the total right hip replacement because he developed respiratory issues a day after he was admitted into the hospital.  Without more, this Court should exclude Dr. Cumbo's opinions for his failure to articulate any scientific basis for his opinion. *See, In re Paoli*, 35 F.3d 717, 746 (3d Cir. 1994) (holding that judges may exclude evidence "if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions").

Dr. Cumbo's analysis also fails to consider that JOSEPH TOMAS may have been exposed to the bacteria which caused his December 3, 2015 repertory issues from other sources not related to his right hip replacement hospital stay.  It is important to note JOSEPH TOMAS

was hospitalized from November 18, 2015 to November 24, 2015 for a bone marrow biopsy due to his Chronic Myelomonocytic Leukemia ("CMML").[2] *See, Fairview Southdale Hospital After Visit Summary*, attached as Ex. "E".   JOSEPH TOMAS also underwent a blood transfusion on November 30, 2014, also as part of his CMML treatment. *See, Nov. 30, 2014 University of Minnesota Record*, attached as Ex. "F".   As such, if JOSEPH TOMAS was exposed to the bacteria during hospital visits related to his CMML, and such bacteria caused his pneumonia, the causal link between the RITZ CARLTON fall and JOSEPH TOMAS' death would be broken and Plaintiff would be unable to prove her wrongful death claim.[3]

The Third Circuit requires an expert to undertake a differential diagnosis analysis when faced with multiple possible sources for a medical condition. *In re. Paoli*, 35 F.3d at 755; *Kannankeril v. Terminix Int.'l, Inc*., 128 F.3d 802, 807 (3d Cir. 1997).   Differential diagnosis is a technique which identifies the cause of a medical problem by eliminating the likely causes until the most probable one is isolated. *See, Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252-53 (1st Cir. 1998). *See also, In re Paoli*, 35 F.3d at 758 ("at the core of differential diagnosis is a requirement that experts at least consider alternative causes."); *Turbe v. Robert A. Lynch Trucking*, Inc., 41 V.I. 146, 155 (Terr. V.I. 1999)("AT THE CORE OF A Differential diagnosis, however, is a requirement that experts rule out obvious alternative causes.")

As stated above, Dr. Cumbo testified that it could take up to "several days" from when a person is exposed to bacteria until symptoms of pneumonia can manifest.   JOSEPH TOMAS' November 18, 2015 through November 24, 2015 hospital stay and his November 30, 2015 blood transfusion relating to CMML treatment and the December 3, 2015 manifestation of pneumonia symptoms falls within that time period.   Despite this fact, Dr. Cumbo failed to undertake any sort

---

[2] Dr. Cumbo concedes that JOSEPH TOMAS' CMML is unrelated to the RITZ CARLTON fall. *See, Depo of Dr. Cumbo*, Pg. 108, lns. 9 – 19, attached as Ex. "C".
[3] RITZ CARLTON also disputes the total right hip replacement was related to the fall.

of differential diagnosis addressing whether the November 18, 2015 through November 24, 2015 CMML hospital stay and/or November 30, 2015 blood transfusion could have been the source of the bacteria which lead to the alleged hospital acquired pneumonia.

Since Dr. Cumbo failed to undertake a differential diagnosis and exclude other likely sources of bacteria exposure as the pneumonia's cause, his opinion is unreliable. *See, Arnold v. Loose*, 352 F.2d 959, 963 (3d Cir. 1965)(affirming a trial court's ruling to strike an orthopedist's opinion that the plaintiff was in a diabetic coma while being treated in the emergency room when the expert failed to eliminate the massive brain injury as a possible cause for the plaintiff's comatose state); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)(affirming the exclusion of a doctor's causation opinion as the doctor admitted that the plaintiff's symptoms could have had other causes by simply picked the cause most advantageous to the legal claim without support save the Plaintiff's oral history); *Guinn v. AstraZeneca Pharmaceuticals LP*, 602 F.3d 1245 (11th Cir. 2010)(affirming the exclusion of a doctor's opinion that the Plaintiff developed diabetes as a result of taking the prescription drug Seroquel because the doctor failed to consider possible alternative causes of Plaintiff's weight diabetes); *Turbe*, 41 V.I. 155 (excluding a treating physician's opinion that the accident which was the subject of the litigation was the cause of the plaintiff's heart attack because he failed to consider and exclude other recognized causes of heart attack in a person who had occluded arteries such as the plaintiff).  As the opinion is unreliable, it must be stricken.

## III.  Conclusion

In conclusion, the Court should strike Dr. Cumbo as an expert witness in this case as his opinion is unreliable.

Dated October 15, 2018.

Respectfully submitted,

CASE NO.:    3:17-CV-00016
Page 8 of 8

Quintairos, Prieto, Wood & Boyer, P.A.
*Attorneys for Defendant*
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel.:  (305) 670-1101
Fax.:  (305) 670-1161

/s/  William E. Crabill
    William E. Crabill, Esq.
    wcrabill@qpwblaw.com
    V.I. Bar No.:  1003

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court *via* the CM/ECF system this 15th day of October, 2018, which will send a notice of electronic filing to:

Karin A. Bentz, Esq.
Law Offices of Karin A. Bentz, P.C.
5332 Raadets Gade, Suite 3
St. Thomas, VI 00802-6309

/s/ William E. Crabill
William E. Crabill, Esq.
V.I. Bar No.:  1003